*1287 OPINION.
Aettndell :
The petitioner claims a value for 14 patents on March 1, 1913, of $1,438,497, and an allowance for exhaustion based thereon of $117,193 for the year 1919. In support of this claim it introduced testimony setting forth in respect to certain patents the profits realized from the manufacture and sale of the articles, and in respect to other patents the savings in labor or materials by the manufacture or use of the patented devices. In further support of this claim it introduced a witness who was very familiar with the invention, design, manufacture, operation, and sale of printing presses and the accessory devices used therewith.
The figures thus introduced, the various patents, and the unexpired lives at March 1, 1913, are as follows:
697558. 706259. 746297. 752807. 803422. 830527. 837345. 893990-946721. 992853. 985461. 993649. 1008528. 1008536. Patent No. Life after Mar. 1, 1913, in years Prospective savings after Mar. 1,1913 Prospective profits after Mar. 1,1913 Values given by expert 6.126 6.443 7.775 7.987 9.669 10.534 10.764 12.392 * 14. 559 115.825 115.709 ' $30,961.62 44,756.78 $119,373.62 101,781.07 34,025.95 8,771.84 115,789.01 150,157.06 17,788.82 204,000.00 295,415.44 $250,000 200,000 Not given. 60.000 125,000 150,000 75,000 300,000 60,000 100,000 260,000 1 Average.
*1288 The evidence discloses no purchases or sales of patents by the expert called on behalf of petitioner nor a firsthand knowledge on his part of sales of patents other than those related herein. He gave no basis for his valuation and offered no data or figures that would appeal to a prospective purchaser. In fact he admitted that he had no basis other than his judgment. Nor were the purchases testified to very helpful in reaching our conclusion. The evidence relating to the purchase of the patents covering the manufacture of a “ straight line ” press from the Goss Company in 1901 for $250,000, is not sufficient to warrant us in using this transaction as a basis in reaching the value to be placed upon the press.
Patent No. 803422, known as the stereotype finishing machine, was issued to H. C. MacConnell in 1905 and purchased in 1909 for $12,000 by petitioner four years after the invention had been a matter of public record. The expert valued this patent as of March 1, 1913, at $125,000, an increase over its purchase price of over 1,000 per cent. A one-half interest in the Hasselbach clamp was purchased in 1911 for an amount less than what the stereotype machine cost and this patent was valued on March 1, 1913, by the expert witness at $300,000, an increase in value of approximately 3,000 per cent. This patent had been of public record for three years at the time of its purchase.
A patent can have value to a corporation only in so far as benefits flow into the corporation on account of the ownership of or interest in such patent. No prudent investor would invest in a patent unless he foresaw that the ownership thereof would result in profit to himself. These profits may result from the manufacture and sale of a patented article, or from savings in cost of manufacture of an article, or they may result from continued sales of one article by excluding from the market a competing patented article. Without knowledge of some basis of benefits flowing directly or indirectly to a company through the ownership of or rights in a patent it is inconceivable to us how an expert can arrive at the value of such patent.
The entire profits on the patents listed are not, in our opinion, properly assignable to the patents themselves, since part of such profits should go to pay the interest on the plant and equipment used in its manufacture and part is assignable to human ingenuity, management, and advertising. Only the balance is assignable to patents and should be considered in arriving at the fair market value. The petitioner has furnished us no statement as to its tangible assets or other intangible assets, nor any basis on which to apportion a part of the profits attributed to patented articles to such assets.
The savings resulting in manufacturing an article, due to the use of a patent are the nearest approach to a direct measure of value of *1289 any of the bases presented. Yet the total expected savings do not represent the market value of a patent on a specific date for no prudent purchaser would pay for a patent an amount equal to such gross savings since he would thereby lose the interest on the money he invests.
After a consideration of the testimony of the witnesses, the comparative values of the patents shown by such testimony, the position which the patents gave the petitioner in its field, the remaining life of each patent, and the savings in manufacturing costs and profits resulting from the use of the patents, we have arrived at the figures set forth in the findings of fact as representing the fair market values of the several patents as of March 1, 1913.
These patents are subject to exhaustion, and the petitioner is entitled to a deduction for the year 1919 based upon the values of such patents ratably apportioned over the respective unexpired terms of such patents. Appeal of Union Metal Manufacturing Co., 4 B. T. A. 287.
The remaining issue relates to the treatment to be accorded certain amounts received in settlement of canceled Government contracts. The petitioner reported as income from war contracts all of the amounts set forth in the agreement of settlement except $180,000 covered by paragraph 7 of the agreement of August 23, 1919, and $144,368 covered by paragraph (b) (5) of the agreement of February 6, 1919. These two amounts, the petitioner claims, were not income from war contracts, but were advances to cover expenses which it would incur in rearranging its plant and business to its regular line of manufacture.
We have previously passed on a similar issue in the case of A. B. Kirschbaum Co., 5 B. T. A. 65. In that case an additional award of $109,615.60 was made as “ reasonable remuneration for expenditures and obligations or liabilities necessarily incurred in performing or preparing to perform said agreement.” We fail to see any distinction between the character of this award and the character of the two sums involved in this proceeding. The wording of that portion of the agreement is slightly different, but it is apparent that the bases for the awards were the same. The arguments used in the Kirsehbdum case apply equally to this case.
Petitioner also urges that in any event the sum of $324,368 was not a proper addition to net income attributable to war contracts, and that the expenses incident to putting the plant into condition for peace time operation should be applied against it. But it is not necessary for us to decide this question, since we are without competent evidence as to the nature and amount of the expenditures. Accordingly, we are of the opinion that the Commissioner was cor *1290 rect in determining that the two amounts totaling $324,368 were income from Government contracts made between April 6, 1917, and November 11, 1918, and were subject to tax under section 301(c) of the Revenue Act of 1918.
Reviewed by the Board.

Judgment will he entered on 15 days’ notice, wider Buie 50.